OPINION
{¶ 1} Defendant — appellant James D. Rostorfer appeals his conviction and sentence from the Ashland County Court of Common Pleas on two counts of forgery in violation of R.C. 2913.31 (A) (3) one count of petty theft a misdemeanor of the first degree in violation of R.C. 2913.02 (A)(1) and one count of attempted petty theft in violation of Sections 2923.02 (A) and 2913.02 (A)(3) of the Ohio Revised Code. Plaintiff appellee is the State of Ohio.
 {¶ 2} Appellant and his wife Terry Rostorfer had been saving money and collecting brochures in anticipation of their two-year wedding anniversary. The couple lives in Hardin County, Ohio. They learned about the Mohican area and the canoe liveries from brochures and relatives who had visited the Loudonville area in Ashland County, Ohio.
 {¶ 3} On August 10, 2002, the appellant and his wife made the two-hour drive from their home to Ashland County in anticipation of spending the weekend canoeing and celebrating their anniversary. Sometime around 10:00 a.m. the couple stopped at the C-Store which is a convenience store and gas station located in Perrysville, Ohio.
 {¶ 4} Only one clerk, Mary Schaffer, was working the check-out counter that morning. The store was very busy due to the fact that it was a Saturday and the height of the tourist season. Appellant purchased two lottery tickets and a soft drink, paying for his purchase with a twenty dollar bill.
 {¶ 5} The clerk testified that the money did not feel right. She placed the bill on top of her register and gave the appellant his change. She then placed the bill in an envelope and wrote down a short description of the person who handed it her and the time on the envelope. When she had a break she called the sheriff.
 {¶ 6} The deputy took the bill and notified the Loudonville Police Department that someone was passing counterfeit money.
 {¶ 7} The next day, Sunday, August 11, 2002 appellant and his wife stopped at a McDonald's on the way to the canoe liveries. The appellant ordered about three dollars worth of food, paying for the order with a twenty dollar bill. Connie Beechly, who had worked at McDonald's for eleven years, testified she marked the bill with what is called a counterfeit pen pursuant to store policy. The pen displayed a color that indicated the bill was not genuine. She double checked her result, and then reported to her manager. The manager instructed Ms. Beechly to give appellant the soft drinks but not his food or his change. He was instructed to pull forward to a waiting area and an employee would bring the food and change out when the order was ready. In the meantime, the manager called the police. The police arrived as appellant was leaving the parking lot without either his food or the approximately sixteen dollars change. Captain Taylor of the Loudonville Police Department testified that appellant told him he was in a hurry to get to the canoe livery before 1:00 p.m. so he and his wife could go canoeing. The livery was approximately 1.2 miles away from the McDonald's. The stop occurred at approximately 11:55 a.m.
 {¶ 8} Captain Taylor further questioned appellant about his activities and the fake twenty dollar bill. Captain Taylor testified that appellant stated that he and his wife checked into the Mohican River Inn around 12:00 p.m. the day before. The bill was approximately eighty dollars and he paid for it with a one hundred dollar bill receiving twenty dollars in change. The appellant stated that perhaps that is where the fake twenty dollar bill came from.
 {¶ 9} Captain Taylor did not tell the appellant that he was aware of the counterfeit twenty dollar bill being passed at the C-Store on the previous day. Appellant claims to have waited in the line at the McDonald's drive-thru between thirty to forty-five minutes and was worried about missing the canoe trip so he and his wife decided to leave.
 {¶ 10} Appellant testified he told the officer that he had stopped the day before to buy tickets and a drink but, was not sure of the name of the town. Appellant did not deny passing the fake bills, but claimed he did not know the bills were counterfeit.
 {¶ 11} The clerk and manager of McDonald's testified that a thirty to forty-five minute wait in line would be outrageous especially when three people were working that day. Each individual testified that the wait would be between three and five minutes. The clerk from Mohican River Inn testified that the defendant checked in around 5:30 p.m. and did not pay with a one hundred dollar bill, nor was appellant given a twenty dollar bill as change. The clerk remembers appellant and his wife due to a disagreement about the price of the room.
 {¶ 12} As it turns out, appellant did not have a valid Ohio driver's license and he was taken into custody by Captain Taylor at that time.
 {¶ 13} While in jail appellant was questioned by Detective Staley of the Ashland County Sheriff's Office. Detective Staley informed appellant that he was aware of the two instances of counterfeit twenty dollars bills being passed. Detective Staley testified that appellant stated he did not know where Perrysville was located, but he did stop for lottery tickets and a drink on August 10.
 {¶ 14} He further told the detective he checked into the Mohican River Inn at approximately 7:00 p.m. on August 10, 2002. Appellant further told Detective Staley that he must have gotten the twenty dollar bills at a bank in Findley before they left for Ashland County.
 {¶ 15} On August 29, 2002, appellant was indicted by the Ashland County Grand Jury on two counts of forgery, one count of petty theft and one count of attempted petty theft.
 {¶ 16} The case proceeded to jury trial on November 7 and 8 of 2002. The jury was unable to reach a unanimous verdict and the trial court declared a mis-trial. A second jury trial commenced on February 6 and 7 of 2003, which resulted in the jury finding the defendant guilty on all counts.
 {¶ 17} On March 17, 2003, the court held a sentencing hearing and sentenced appellant to a term of incarceration of ten months on each of the forgery counts to run concurrently. Appellant timely appealed. Appellant assigns two errors to the trial court:
 {¶ 18} "The conviction of appellant for two counts of forgery is against the manifest weight of the evidence.
 {¶ 19} "The imposition of a prison sentence in this case imposes an unnecessary burden on state resources."
 I {¶ 20} In his first assignment of error, appellant argues that his conviction for two counts of forgery and the one count of petty theft and one count of attempted petty theft are against the manifest weight of the evidence. We disagree.
 {¶ 21} Weight of the evidence concerns "inclination of thegreater amount of credible evidence, offered in a trial, tosupport one side of the issue rather than the other." State v.Thompkins 78 Ohio St.3d 300, 387 (emphasis in original). (Citations omitted). A judgment sustained by sufficient evidence may nevertheless be reversed as against the weight of the evidence. Id. The standard to be applied by the appellate court is as follows:
 {¶ 22} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony. Tibbs, [v. Florida 457 U.S. 31], at 42, 102 S.Ct. at 2218, 72 L. Ed.2d at 661. See, also, State v.Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219,485 N.E.2d 717, 1 720-21 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.") Id.
 {¶ 23} In this assignment of error, appellant contends the jury's verdict is against the manifest weight of the evidence because based upon the evidence the jury should have found that the appellant did not know the bills were counterfeit. We have reviewed the record of this matter and conclude the jury's verdict is not against the manifest weight of the evidence.
 {¶ 24} Appellant was not charged with manufacturing the bills, but rather uttering or passing the bills into circulation. R.C. 2913.31 defines forgery and uttering as:
 {¶ 25} "(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
 {¶ 26} "(1) Forge any writing of another without the other person's authority;
 {¶ 27} "(2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize that act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed;
 {¶ 28} "(3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged."
 {¶ 29} R.C. 2901.22 (B) defines knowingly as: "[a] person asks knowingly, or acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause similar result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. In addition, in this case, the jury was instructed in accordance with the Ohio Jury Instruction, 409.11, paragraph three, "since you cannot look into the mind of another, knowledge is determined from all facts and circumstances in evidence." (T. at 323).
 {¶ 30} As set forth, supra, in the recitation of the facts of the case, the State presented evidence that appellant, when confronted with the counterfeit twenty dollar bills gave conflicting statements to the police. Additionally, the clerks at both McDonald's and the Mohican River Inn contradicted appellant's testimony and supported the testimony of the investigating law enforcement officers.
 {¶ 31} Although appellant cross-examined each witness and testified himself to contradict the State's witnesses, the jury was free to accept or reject any and all of the witnesses' testimony and assess the witnesses' credibility. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
 {¶ 32} We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial.
 {¶ 33} Finally, our review of the record reveals reasonable minds could have reached different conclusions as to whether each element of the offenses were proven beyond a reasonable doubt.
 {¶ 34} Accordingly, appellant's first assignment of error is overruled.
 II {¶ 35} In his second assignment of error contends that the imposition of a prison sentence in this case is an unnecessary burden on the State resources. We disagree.
 {¶ 36} R.C. 2929.13 (A) provides in pertinent part: "except as provided in (E), (F), or (G) of this section and unless a specific sanction is required to be imposed, or is precluded from being imposed pursuant to law, a court that imposes a sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in Sections 2929.14 to 2929.18 of the Revised Code. The sentence shall not impose an unnecessary burden on State or local governmental resources."
 {¶ 37} A question arises as to whether appellant has a right to appeal his sentence upon the grounds that it is an unnecessary burden on State resources. R.C. 2953.08 concerns appeals based upon felony sentencing guidelines. Pursuant to R.C.2953.08 (A)(2) a person who receives a prison sentence for a felony of the fourth or fifth degree may only appeal as of right the imposition of the prison sentence if the "trial court did not specify at sentencing that it found one or more factors specified in division (B)(1)(a) to (i) of Section 2929.13 of the Revised Code to apply relative to the defendant. If the court specifies that it found one or more of the factors to apply relative to the defendant, the defendant is not entitled under this division to appeal as a matter of right the sentence imposed upon the offender." Section 2929.13(B)(1)(g) indicates the court shall consider whether the offender previously served a prison term. The trial court in this case noted that the appellant "does have two previous felony convictions as noted in the trial. In 1995, the offender was charged with burglary in Hardin County. Sentenced to a prison term of three to fifteen years concurrently therewith. On or about the same time, he did receive a B and E [sic.] sentence out of Logan County, which was a suspended eighteen months sentence * * *. He was granted an early release from prison after serving six months * * *." (T. at 342). Accordingly, it would appear that appellant is not permitted to appeal the imposition of the prison sentence rather than a community control sanction in this case, State v. Brown, Hamilton App. No. C-010683, 2002-Ohio-2762 at paragraph 1-2; State v.McNeil (May 22, 1998), Ham. App. No. C-960980.
 {¶ 38} Appellant did not receive the maximum sentence for either of the felony offenses. Nor did the trial court impose consecutive sentences on the two forgery counts. As appellant had previously served a prison term, the R.C. 2929.14 (B) presumption of the appropriateness of the shortest authorized prison term does not apply to this case.
 {¶ 39} Appellant does not argue that the trial court failed to make the required findings pursuant to R.C. 2929.12. Nor does appellant argue the trial court erred in finding that appellant was not amenable to an available community control sanction. R.C.2929.13(B)(2)(a). Appellant fails to support his argument that the imposition of prison sanction in this case, constitutes and "unnecessary burden on State or local resources."
 {¶ 40} In addition to noting that the appellant had previously served the prison sentence, the trial court noted that the appellant had an active warrant for failure to appear in the Findley Municipal Court on a "driving under the influence" charge. (T. at 342). The court further noted the likelihood of recidivism based upon defendant's prior felony and misdemeanor history, and that the appellant has failed to respond favorably in the past to the sanctions imposed by the courts. (T. at 343). The court further found that an imposition of a prison sentence on this occasion is consistent with the purposes and principles of sentencing based upon the offender's past record. (Id.).
 {¶ 41} Finally, the court noted that the offender is not amenable to an available community control sanction at this time "and, further, the court does find that the minimum prison term would not adequately protect the public from future harm." (Id.).
 {¶ 42} Therefore, we find the trial court sufficiently made R.C. 2929.13 and 2929.14 findings at the sentencing hearing such as to overcome the argument for non-imposition of a prison sentence in this case. Accordingly, appellant's second assignment of error is overruled.
 {¶ 43} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas of Ashland County, Ohio, is hereby affirmed.
Gwin, P.J., Farmer, J. and Boggins, J., concur.